No. 31,445

FRED W. OLMSTEAD, *Appellee*, v. FIDELITY AND DEPOSIT COMPANY OF MARYLAND, *Appellant*.

(28 P. 2d 722.)

Opinion filed January 27, 1934.

*H. W. Hart, Glenn Porter, Enos E. Hook, Edward H. Jamison* and *Getto McDonald,* all of Wichita, for the appellant.

*Clyde E. Souders* and *Otto R. Souders,* both of Wichita, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This was an action against the surety on a bond given by a contractor who had undertaken to build a house for plaintiff.

The bond recited that on June 14, 1930, W. W. Stringer, of Wichita, had entered into a written agreement with Fred W. Olmstead, of Anthony, to build a residence and garage for the latter in accordance with plans and specifications prepared by Ted Mason,

architect. The principal obligation of the bond of present concern provided:

"Now, therefore, the condition of this obligation is such that, if the principal shall faithfully perform the contract on his part and shall fully indemnify and save harmless the owner from all cost and damage which he may suffer by reason of failure so to do and shall fully reimburse and repay the owner all outlay and expense which the owner may incur in making good any such default, and further, that if the principal shall pay all persons who have contracts directly with the principal for labor or materials, failing which such persons shall have a direct right of action against the principal and surety under this obligation, subject to the owner's priority, then this obligation shall be null and void, otherwise it shall remain in full force and effect."

This bond was signed by the contractor and by defendant.

About the time the house was completed plaintiff was sued by Stringer on a demand arising out of the building contract, and liens by Stringer and various labor and material men were filed against his property. Plaintiff Olmstead notified defendant's agents at Wichita and Kansas City of these proceedings, but the defendant surety company refrained from participating in that action and plaintiff had to bear its burdens alone. This, however, he did successfully, defeating Stringer's demand and recovering judgment on a cross demand against Stringer for $260.77. However, in that action he was subjected to necessary expenses as follows:

Deposit for referee and stenographer by order of court............... $350.00
Expenses for witnesses............................................. 70.00
Personal expenses.................................................. 60.00
Attorneys' fees paid............................................... 850.00

Total ........................................................$1,330.00

Plaintiff's petition pleaded the foregoing facts, set up the bond signed by defendant, and prayed judgment against defendant for the sum awarded him against Stringer ($260.70 and interest) but which the latter had not paid; and plaintiff also prayed for recoupment against defendant for $1,330 for his expenses incurred and paid in the case of *Stringer v. Olmstead,* and in defeating the lien claims filed against his property.

Defendant's verified answer included a general denial and an admission of some noncontroversial facts pleaded by plaintiff, and alleged that it was not a party to the action and was not bound by the judgment in *Stringer v. Olmstead,* and that the prior action was to obtain payment for extra labor and material and not within the pro-

visions of the bond to which defendant had obligated itself. Defendant also raised issues of law and of fact touching its liability on the items of expense set out in plaintiff's petition.

The cause was tried before a jury which returned a verdict for the full amount prayed for by plaintiff.

Defendant appeals, assigning various errors which it summarizes into three points which will be noted in the order of their presentation.

1. It is contended that plaintiff was not entitled to recover the amount of attorneys' fees and court costs he expended in the earlier litigation. No contention is made that these expenses were unreasonable, but that defendant was not liable for them under the terms of the bond set out above. It is perfectly clear, however, that if plaintiff had not bestirred himself to employ attorneys he would have incurred a judgment liability in behalf of Stringer and his property would have been subjected to a lien by Stringer and liens in favor of other labor and material men who followed the cue given them by Stringer. The bond to which defendant set its hand contained specific provision that any alterations in the terms of the building contract or the work to be done under it should not release the surety, and notice of any such alteration was expressly waived. It is quite understandable, of course, that some of the matters in controversy between Olmstead and Stringer in the earlier litigation may not have been within the terms of the bond, but it was proper and necessary (to avoid the rule of *res judicata*) that all matters properly justiciable in that litigation should be adjudicated in that lawsuit whether defendant was concerned with all the details thereof or not. If defendant had performed its bounden duty in that lawsuit, it would have had its own attorneys on hand to keep separate whatever matters in litigation between Stringer and Olmstead there may have been in which it had no concern as surety on the bond now sued on. Moreover, the filing of lien claims by other creditors of Stringer necessitated the employment of a lawyer by plaintiff, since defendant wholly failed to give those matters the attention which under its bond it was obligated to do. It is not shown here that any of the services performed by Olmstead's attorneys and the other expenses incurred by him were severable from the matters covered by the defendant's bond nor that it was practicable to segregate those services and expenses so as to charge part thereof to defendant and

the remainder to plaintiff, consequently the items as charged by plaintiff and sustained by the trial court's findings of fact will have to stand. (*City of Topeka v. Ritchie,* 102 Kan. 384, 170 Pac. 1003; *Ireland v. Bank,* 103 Kan. 618, 176 Pac. 102 and citations; *City of McPherson v. Stucker,* 129 Kan. 262, 282 Pac. 703.)

2. Defendant's next contention is that it was not bound by the judgment, because it was not a party to the action and was not notified of any default on the part of Stringer, the principal on the bond. It appears, however, that plaintiff gave due notice to two of defendant's agents—the one who transacted the business with plaintiff in furnishing the bond, and that agent's superior. Indeed one of these competent agents of defendant's repeatedly assured Olmstead that the surety company would look after the Stringer lawsuit and the lien claims, and actually introduced to Olmstead the attorney who did attend to the case and its incidents, but did it, however, as the employed attorney of Olmstead and not of defendant. Defendant's agent, Cook, testified:

"Mr. Olmstead came to my office and advised me that W. W. Stringer had filed suit against him. I told him he had better go hire an attorney.

. . . . . . . . . . . . . . .

"Q. What else was said there? A. I told him that the company would take care of it.

"Q. That the company would take care of him? A. Yes, sir.

. . . . . . . . . . . . . . .

"*Cross-examination:*

. . . . . . . . . . . . . . .

"Q. Now, did you have any other conversations with him at other times? A. A number of them.

. . . . . . . . . . . . . . .

"Q. Do you remember him saying anything about mechanic's liens filed? A. Yes.

. . . . . . . . . . . . . . .

"Q. But you knew they were asking for judgment against him, didn't you? A. Yes, I knew that.

. . . . . . . . . . . . . . .

"Q. But you knew at that time when he told you about the suits being filed on the liens wherein they were asking for money judgments that if somebody didn't defend the case that they would get a personal judgment against Mr. Olmstead? A. I told him he better take care of it himself.

. . . . . . . . . . . . . . .

"Q. That so far as you know did . . . the bonding company, . . . have any attorney to represent Mr. Olmstead or take care of any obligation under the bond? . . . A. No, sir.

. . . . . . . . . . . . . . .

"I told him he had better take care of these liens himself. I notified Mr. Meek of the liens being filed, but he did not arrange to defend Mr. Olmstead.

. . . . . . . . . . . . . . . .

"Mr. Meek is just a claim man for the Fidelity and Deposit Company, and is in charge of the claim department for the state of Kansas."

It therefore appears that defendant's contentions on this point are untenable. It was by its own choice that defendant refrained from participating in the earlier litigation. It had ample notice of it and of its possible consequences to the man to whom it had bound itself to save harmless from all outlay and expense to which he might be subjected on account of the contractual delinquencies of the principal on the bond. Moreover, it is now too late for defendant to urge legal points which might have availed it in the earlier litigation. (*Kennedy v. Brown*, 21 Kan. 171; *Toelle v. National Surety Co.*, 115 Kan. 425, 223 Pac. 256; 50 C. J. 199.) In *Ireland v. Bank*, supra, it was said:

"The judgment would have been conclusive evidence [of plaintiff's damages] if the plaintiff had notified the defendants of the action, or had requested them to defend therein. (14 R. C. L. 61; 22 Cyc. 106; Note, 22 Am. St. Rep. 205; 3 Ency. of Ev. 277.)" (p. 621.)

3. It is finally urged that the trial court erred in refusing to submit certain interrogatories to the jury. The first of these reads:

"1. Do you include in your verdict an amount for attorney fees in the case of *W. W. Stringer v. Fred W. Olmstead et al.*, heretofore tried before a referee in this court?"

Since the jury's verdict was for the full amount prayed for, it was in effect an affirmative answer to this interrogatory, and no prejudice can be discerned in the trial court's refusal to submit it. Three other interrogatories which the trial court refused to submit would have required the jury to state how much of the attorneys' fees the jury was allowing for their services in that part of the litigation between *Stringer v. Olmstead*, which pertained to Stringer's demand against Olmstead, and what portion for the attorneys' services in prosecuting Olmstead's cross action against Stringer. Since there was no evidence on which the jury could segregate and itemize these details the trial court did not err in its refusal to submit them.

There is nothing approaching the gravity of material error in this record, and the judgment is affirmed.

HUTCHISON, J., not sitting.